IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

_____

| | |
|---|---|
| JOSHUA ADAM DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No: _____ |
| ) | |
| ) | |
| FRANKE FOODSERVICE ) | |
| SYSTEMS, ) | JURY DEMANDED |
| INC. ) | |
| ) | |
| Defendant. ) | |

_____

# COMPLAINT
_____

Plaintiff, JOSHUA DAVIS, by and through his attorneys, alleges for his Complaint as follows:

## I. INTRODUCTION

1.     Plaintiff brings this action against FRANKE FOODSERVICE SYSTEMS, INC. for legal relief to redress unlawful violations of Plaintiff's rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.

## II. THE PARTIES

### A. THE PLAINTIFF

2.     Plaintiff, Joshua Davis, currently resides in Marietta, Georgia and is a citizen of the United States.

### B. THE DEFENDANT

3.     Defendant, Franke Foodservice Systems, Inc. is an employer who, at times relevant hereto, was located within the Eastern District of Tennessee, at 1 Badenhop

Boulevard, Fayetteville, Tennessee, and was an "employer" (of more than fifteen persons) of Joshua Davis within the provisions of the ADA, with Amendments.

4. The Defendant is bound by the law and regulations concerning the ADA, with Amendments.

### III. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Plaintiff timely filed a charge of discrimination with the EEOC. Defendant submitted a written response dated May 19, 2016. After passage of more than 180 days, Plaintiff requested and received a Notice of Suit Rights. Plaintiff then filed this action within the requisite ninety days. Accordingly, Plaintiff has exhausted administrative prerequisites under ADA.

6. Venue is proper in the Eastern District of Tennessee under 28 U.S.C. §1391(b)-(c). Defendant conducts business within the Court's jurisdictional limits, and the claims at issue arose within the Court's jurisdictional limits.

### IV. FACTS

7. Plaintiff is an individual with a "disability," as that term of art is defined by the ADA, with Amendments. Specifically, Plaintiff has the "impairment" of macular degeneration which affects Plaintiff's central vision, but not his peripheral vision. Without mitigating measures such as prescription bioptic telescopes or magnifying tools or applications, this impairment substantially limits Plaintiff in the major life activity of seeing.

8. Due to his disability, Plaintiff uses mitigating measures of prescription bioptic telescopes, magnifying lenses, and/or magnifying software applications. With these

mitigating measures, Plaintiff is able to see and can drive a motor vehicle. He holds a valid Tennessee Driver's License with use of his prescription bioptic telescopes.

9. Defendant is a world-wide supplier of commercial kitchens as well as restaurant equipment and parts. Defendant has a global presence with locations in multiple countries, employing over eleven thousand employees, and having a self-reported $2.5 billion dollars in sales last year.

10. In August 2015, Defendant employed Plaintiff through a staffing company. It directed his work, supervised his work, and created the job duties. Thus, it "dually" employed Plaintiff.

11. Defendant placed Plaintiff in a shipping position in Defendant's Fayetteville, Tennessee facility. Plaintiff's responsibilities included, but were not limited to, reading selecting and loading items for shipment as well as driving a forklift to retrieve items.

12. Plaintiff ably performed this position to the point that Defendant approached Plaintiff about becoming a permanent employee, not just a leased employee, after a few weeks of his initial assignment.

13. In October of 2015, a permanent position in the receiving department was to become available. Therefore, in September 2015, Defendant moved Plaintiff into a temporary position of Production Worker in the receiving department so that when the position became available for permanent hire, Plaintiff would already be familiar with performing the duties of that specific position.

14. The position in the receiving department where Plaintiff was moved was similar to his previous position in the shipping department (that rather than loading items for delivery, he was unloading items for stocking on Defendant's warehouse shelves).

15. Plaintiff utilized his mitigating measure of prescription bioptic telescopes, magnifying lenses, and/or magnifying software applications on his personal phone (for reading) as he had done previously and capably performed the receiving position job too. As a result, Defendant made Plaintiff a conditional offer of permanent employment in October 2015.

16. The offer was conditional upon Plaintiff taking and passing a physical examination which included a vision exam that utilized a standard eye chart for testing.

17. Plaintiff informed Defendant that due to his disability of macular degeneration, he could not be pass a vision exam that utilized the standard eye chart.

18. Plaintiff was given the vision exam with the eye chart nonetheless. When Plaintiff did not pass, Defendant's Human Resources department gave Plaintiff an alternative as part of the interactive process: It stated that a letter from Plaintiff's own vision specialist stating that he could perform the essential functions of Production Worker, notably operating a forklift, would suffice as an alternative to passing the standard eye chart.

19. Plaintiff engaged in this interactive process, too. On October 19, 2015, he provided a letter from his vision specialist physician to Defendant which stated in part:

> *Mr. Davis was fit with a pair of 2.2x prescription bioptic telescopes. The bioptics device allowed Mr. Davis to improve his corrected vision to 20/40 in each eye. With this vision Mr. Davis is legal to drive an automobile. Also, wearing this device will give Joshua sufficient vision to drive a forklift. If he wears his device he should have no issues operating a forklift. If any further information is needed please feel free to contact me.*

20. But then Defendant changed its course. Rather than accept Plaintiff's physician's letter (and his having *performed* the job already), Defendant advised Plaintiff that he would have to retake the test. But Defendant utilized the very same test and,

predictably, the very same result occurred. This time, on October 26, 2015, Defendant wrote to Plaintiff rescinding its offer. Defendant claimed that due to his vision limitations it believed he could not perform the job and dubbed him a "direct safety risk":

> *We regret to inform that we find it necessary to rescind our conditional offer of employment made on October 12, 2015, for the Production Worker position with Franke Foodservice Systems, Inc.*
>
> *This decision was influenced by the results of your pre-employment physical. It has been determined from the results of your pre-employment physical that you are not qualified to safely perform the essential functions of the job due to your visual limitations. Even if qualified, Franke believes that you would present a direct safety risk to our employees.*

21. Defendant's decision is "direct evidence" of discrimination—that is, it relied directly on Plaintiff's disability in the decision. It not only refused to hire Plaintiff permanently, it also discharged Plaintiff from being a leased employee. Thus, Defendant engaged in disability discrimination (refusal to hire and/or termination because of disability). Alternatively, Defendant refused to allow Plaintiff use of his reasonable accommodation or mitigating measure. Nor did Defendant consider Plaintiff for any other job for which *Defendant* did not regard Plaintiff as a safety risk.

22. Defendant's actions, above, have denied Plaintiff income (back pay and front pay), benefits, and have caused him worry, anxiety, financial distress, and embarrassment. Accordingly, Plaintiff seeks wage loss, benefits loss, reinstatement, compensatory damages, and attorneys fees and costs. He also seeks punitive damages for any intentional deprivation of Plaintiff's rights under the ADAAA.

## V. CAUSES OF ACTION UNDER THE ADA

23. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-22 herein. By its actions alleged herein, Defendant discriminated against Plaintiff in violation of the ADAAA due to "disability" and/or by denying Plaintiff a reasonable accommodation or using his mitigating measures of bioptic telescopes, or reassigning him to a different position within its facility.

## VI. PRAYER FOR RELIEF

24. WHEREFORE, the Plaintiff prays for the following relief:

    A. That proper process issue along with a copy of this complaint requiring the Defendant to appear and answer;

    B. That Plaintiff be awarded damages in the amount of any wages, salary, employment benefits or other compensation, including, but not limited to back pay and front pay, plus prejudgment interest;

    C. Any actual monetary loss sustained by the Plaintiff;

    D. Compensatory damages for emotional harm, suffering, humiliation, and embarrassment, along with punitive damages if proved;

    E. Reasonable attorneys' fees;

    F. The costs and expenses of this action;

    G. Such other legal and equitable relief to which Plaintiff may be entitled; and

    H. Plaintiff further demands a Jury to try this cause.

GILBERT RUSSELL McWHERTER
SCOTT & BOBBITT PLC

s/_____

JUSTIN S. GILBERT #017079
100 W. Martin Luther King Blvd,
Suite 504 Chattanooga, TN 37402
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com

JONATHAN L. BOBBITT (23515)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
Telephone: (615) 354-1144
Facsimile: (731) 664-1540
jbobbitt@gilbertfirm.com

JESSICA F. SALONUS #28158
101 North Highland
Jackson, TN 38301
Telephone: 731-664-1340
Facsimile: 731-664-1540
jsalonus@gilbertfirm.com